FIREMAN'S FUND INSURANCE COM-
PANIES and American Insurance
Company, Plaintiffs,

v.

EX–CELL–O CORPORATION,
et al., Defendants.

EX–CELL–O CORPORATION, et
al., Third–Party Plaintiffs,

v

AIU INSURANCE COMPANY (Successor to American International Insurance Company), et al., Third–Party Defendants.

No. 85–CV–71371.

United States District Court,
E.D. Michigan, S.D.

March 25, 1992.

Peter B. Kupelian, Tucker & Rolf, Southfield, Mich., for Zurich American Ins. Co.

Paul L. Gingras, and Patricia St. Peter, Zelle & Larson, Minneapolis, Minn. John W. Henke III, Stark, Reagan & Finnerty, Troy, Mich., for Wausau Ins. Co.

Herbert G. Sparrow III, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich. Barry M. Kelman, Gofrank & Kelman, Southfield, Mich., for Travelers Ins.

Peter A. Metters, Richard C. Sanders, Detroit, Mich. Robert B. Webster, Hill Lewis, Birmingham, Mich. Nicholas J. Zoogman, Eugene R. Anderson, Anderson, Russell, Kill & Olick, New York City, for Ex–Cell–O, McCord and Davidson.

Michael G. Costello, Plunkett & Cooney, Detroit, Mich. Jeffrey Silberfeld, Rivkin, Leff, Sherman & Radler, Uniondale, N.Y., for American Intern. Ins. Co.

Philip Barber, Anderson, Russell, Kill & Olick, New York City.

## ORDER ACCEPTING SPECIAL MASTER'S REPORT AND RECOMMENDATION WITH MODIFICATIONS

FEIKENS, District Judge.

This case has been on this court's docket since 1985. It is an action for declaratory judgment. What has been troublesome throughout is the fact that the regulatory agencies which issued the PRP letters to the alleged contaminating companies (among which are these policyholders) have not brought this action, evidenced by the PRP letters, to final resolution. Nonetheless, this court has proceeded with some misgiving to a complete declaratory judgment, which involves the resolution of numerous ancillary issues and a full-blown trial. The trial, as a matter of necessity, involved taking extensive proof in order to determine whether or not defendant Wausau, an insurer, had any duty of indemnification under its policies. The court found that it did not.

Some issues have been too difficult to resolve without a resolution of the underlying action. Accordingly, even though Magistrate Judge Steven D. Pepe has done a careful analysis of intricate issues involving defense costs, some cannot be resolved until the underlying action has been decided.

It seems to this court that the regulatory agencies issuing these PRP letters have placed heavy burdens on the judicial system to decide declaratory judgment actions which, of necessity, must involve a trial on the merits of the underlying actions.

The court has reviewed the Special Master's Report and Recommendation submitted in this case and any objections filed thereto. The Report and Recommendation, with the modifications noted below, is hereby accepted as the findings and conclusions of the court.

## Objections

In response to defendant Wausau's objections, I make the following modifications to the Special Master's Report and Recommendation:

*Objection # 1:* I find this objection to be without merit. Magistrate Judge Steven D. Pepe found that the defense costs allowed were within the parameters of "reasonable professional assistance."

*Objection # 2:* I find that the discussion on pages six through eight of the Report and Recommendation does not "imply" that the policyholders "had" to retain their own counsel rather than "chose" to retain their own counsel prior to their tender of defense to Wausau. However, to the extent that inference can be made, I find this points out a distinction without a difference. By the terms of this and my January 17, 1992 order, Wausau is not required to pay for any defense costs incurred prior to the policyholders' tender of defense on January 6, 1986.

## The Allocation Formula

█ In accord with my opinion in *Ins. Co. of No. Am. v. Forty–Eight Insulations,* 451 F.Supp. 1230, 1245 (E.D.Mich. 1978), defense costs should be allocated, whenever possible, based on the insurer's period of coverage divided by the actual dates of exposure to contamination.

Allocation for the Cardinal site is straightforward. In my August 30, 1990 opinion, as amended on November 19, 1990, *Fireman's Fund Ins. Companies v. Ex–Cell–O Corp.,* 750 F.Supp. 1340, 1354 (E.D.Mich.1990), I held that the period of actual exposure at this site was 1967 to 1981. Furthermore, Wausau agrees that these dates are accurate. *Patricia St. Peter's February 24, 1992 letter to Judge Pepe.* The allocation is therefore 9/15 (.6).

As for the Dover site, Wausau asserts, based on my August 30, 1990 opinion, as amended, that the period of actual exposure was 1961 to 1979. *Patricia St. Peter's February 24, 1992 letter to Judge Pepe; Fireman's Fund,* 750 F.Supp. at 1346. However, the policyholders point to the "Joint Pre–Trial Statement Regarding Determination of Defense Costs," dated May 18, 1990, where Wausau agreed the Dover site only received waste from 1961 until 1978. *Philip Barber's October 4, 1991 letter to Judge Pepe.* While my finding was different, I nonetheless feel bound to abide by the parties' agreement. Accordingly, the allocation is 9/18 (.5).

As to the Farmington site, the policyholders assert their use began in 1966 and that there "is no evidence in the record that any discharges of waste took place at the Farmington plant site after 1984." *Philip Barber's October 4, 1991 letter to Judge Pepe.* Wausau responds there has been no finding that the actual exposure at this site terminated in 1984, but they provide no alternative date.

In my August 30, 1990 opinion, as amended, I held that the Davidson plant in Farmington began operations in 1966 and that "Davidson continued to discharge contaminants into the environment at the Farmington site into the 1980s, after the policies at issue had expired." *Fireman's Fund,* 750 F.Supp. at 1345, 1349. However, I made no explicit finding as to exactly when in the 1980s that exposure ceased.

While I find now that there is no evidence in the record of any exposure to contamination at this site subsequent to 1984, I likewise cannot rule out that possibility. The period of actual exposure at this site is some period beginning in 1966 and ending from 1984 to 1990. I therefore find that the period of actual exposure at the Farmington site for the purposes of this order was 1966 to 1990, and the resulting interim allocation is 9/25 (.36).

As I did with the consulting fees and hydrogeological study costs in my January 17, 1992 order, I find that it is inappropriate to determine now what alternative allocation formula, if any, is appropriate for this site. If it becomes clear, when the underlying action initiated by the PRP letters is resolved, that the actual period of exposure at this site is something other than 25 years, the policyholders may move to correct this allocation and thus be entitled to a greater percentage of the defense

costs they have proven. This court will retain jurisdiction over this matter until the necessary facts and circumstances develop for a more meaningful determination of this issue.

ACCORDINGLY, IT IS ORDERED:

■ 1. No tender of defense was made by the policyholders as to the Ottati and Goss/Kingston Steel Drum Site, and thus for the reasons stated and accepted by this court's order of January 17, 1992, no legal services or hydrogeological studies related solely to that site are included as defense costs.

■ 2. Legal services related to the federal court declaratory judgment action are not, as the policyholders acknowledge, defense costs.

■ 3. The policyholders have failed to carry their burden of proving that legal services related to preparation of a corporate audit, income taxes, or related to administration of the trust account for the Dover Landfill site or to the purchase of a site are defense costs.

4. Legal services related to the Farmington lagoon closure are not, as the policyholders appear to acknowledge, defense costs.

5. Legal services undertaken to determine and evaluate how other entities on other sites negotiated and resolved issues similar to those encountered by the policyholders at the Cardinal Landfill, Farmington Plant, and Dover Landfill sites are legitimate defense costs.

■ 6. Costs for legal periodicals, reporter services and other publications, and costs and lawyer time related to educational seminars are not separately payable as defense costs but are part of a law firm's overhead and educational expenses which are reflected in the attorneys' hourly billing rates and compensated through payment for other defense services at those hourly rates.

7. Costs for legal services related to determining whether a potential conflict of interest allows the firm to represent a new client is an administrative cost of the law firm and not a defense cost.

8. The policyholders have carried their burden of proving that the following legal services and costs, as calculated from the monthly billing statements, are defense costs for the Cardinal Landfill, Farmington Plant, and Dover Landfill sites from January 6, 1986 until August 30, 1990:

| | |
|---|---|
| Cardinal Landfill | $ 23,065.65 |
| Farmington Plant | $ 40,541.75 |
| Dover Landfill | $141,624.08 |

The computation and adjustments for billing entries that were not demonstrated to be defense costs are set out in Appendix "A" of the Report and Recommendation.

9. Wausau is liable for the portion of defense costs for each site in accordance with the allocation formulas (including the interim allocation for the Farmington site) described herein.

Accordingly, Wausau is liable for the following defense costs:

Cardinal Landfill
$$\$\ 23,065.65 \times .6\ = \$13,839.39$$
Dover Landfill
$$\$141,624.08 \times .5\ = \$70,812.04$$
Farmington Plant
$$\$\ 40,541.75 \times .36 = \$14,595.03$$

IT IS SO ORDERED.

A judgment may be presented.

## SPECIAL MASTER'S AMENDED REPORT AND RECOMMENDATION DETERMINING DEFENSE COSTS

PEPE, United States Magistrate Judge.

An earlier report and recommendation on various categorical determinations concerning "notice," "tender of defense," and consulting fees for hydrogeological studies, was accepted by this Court with modifications on January 17, 1992. 790 F.Supp. 1318. This report and recommendation includes some minor determinations regarding appropriate defense costs and contains a calculation of allowable defense costs incurred by the policyholders in light of the parameters set by this Court. Pursuant to the January 17, 1992 order, these calculations include no attorney's fees or other items of costs that were incurred prior to January 6, 1986, the date upon which the

policyholders tendered their defense to Wausau on the Cardinal Landfill, the Farmington Plant, and the Dover Landfill.

## A. PRELIMINARY MATTERS

### 1. Denial of the Policyholders' Request for an Additional Hearing:

Since the Court's ruling on the earlier report, I have held two status conferences with the attorneys for the policyholders and Wausau regarding the various unresolved issues related to the calculation of defense costs.

The attorney for the policyholders sought an additional hearing to put on supplemental evidence responding to certain of the objections made by Wausau. I held a hearing prior to the issuance of my earlier report. As a preface to that hearing, I held a status conference with counsel in which it was determined that all issues involved in the policyholders' petitions for defense costs would be resolved in an initial report and recommendation, which would include recommendations to the Court resolving all legal questions and also mixed questions of law and fact as they related to computation of defense costs. It was anticipated at that time, and the attorneys were advised, that the while the Court was considering their objections to the initial Special Master's report, the attorneys would assist me in totaling the various attorney's fees and costs consistent with the legal determinations made in the report. A final computation of defense costs could then be made by the Court after Judge Feikens had decided which portions of my initial report and recommendation were accepted.

While I had originally anticipated resolving all categorical issues in the initial report, in a telephonic status conference with counsel in late December 1991, I decided to deal only with the primary questions of notice, tender, and consulting fees in that first report and recommendation. This ap-proach left only a number of minor determinations regarding specific objections to various billing entries, as well as the actual defense cost computations, to be covered in this second report. Had I included these minor issues in my earlier report as initially planned, the policyholders would not have been provided with a supplemental hearing.

In my earlier status conferences with counsel, prior to the hearing on defense costs, there was no suggestion that a second hearing would be provided following the initial report and prior to my summing up the defense costs for the final report. The parties were provided a hearing on defense costs. I put no restrictions on the scope of the earlier hearing, other than noting that the summation of billing entries in the categories found to be defense costs would follow in a final Special Master's report.[1] Thus, I feel that the fortuity that a number of minor issues were reserved for consideration in this second report should not provide the policyholders with an opportunity for an additional hearing to supplement the record. Prior to the hearing on defense costs, the policyholders were aware of all of the objections made by Wausau. Had they wished to present argument or evidence on such issues as why legal services related to a corporate audit letter, taxes, or the permitting process were defense costs, they could have done so at the earlier hearing as they did on other costs such as the hydrogeological consulting fees. Thus, no supplemental hearing will be allowed.

I will, however, consider more than the parties' formal pleadings and in-court arguments on defense costs. At a status conference on February 21, 1992, I indicated to counsel that I would consider the entire exchange of correspondence between the parties or with the Special Master during the discovery phases on various defense cost issues.[2] This approach will benefit both sides because the correspondence deals with objections and justifications re-

---

1. The notice sent to counsel regarding the hearing list the type of proceeding as a "hearing on Special Master determination of defense costs" (*See* Notice of August 28, 1991, for the September 18, 1991 hearing, which was later adjourned to September 25, 1991).

2. These letters are being filed in the Court record simultaneously with this report and recommendation, but are *not* made part of this report. A list of this correspondence is set out in Appendix B to this report.

garding defense costs that may not have been raised in a formal pleading or during the hearing. In addition, because the policyholders had not formally submitted an affidavit from a defense attorney laying a foundation for the admission of the attorney time and cost entries, I provided the policyholders with an opportunity to submit such an affidavit prior to my submission of this final report and recommendation. This affidavit, Wausau's objections, and the policyholders' letter of response have been received.

### 2. *The Ottati and Goss/Kingston Steel Drum Site:*

While *notice* was given to Wausau of the environmental claims regarding the Ottati and Goss/Kingston Steel Drum site, Wausau contends that no formal *tender* was ever made upon Wausau to undertake a defense. They note that a letter from Walter Vashak (Ex–Cell–O's in-house counsel) dated January 6, 1986, specifically stated that no formal demand was being made at that time with regard to the Ottati and Goss site. Following a review of the records, counsel for the policyholders, at the status conference on February 22, 1992, acknowledged that there was no formal written demand that Wausau undertake the defense of Ottati and Goss.

Accordingly, because this Court has determined that, under the law of State of Michigan, no defense costs are due for periods prior to the tender of defense—there being no breach of contract prior to that time—it is recommended that all attorney's fees and costs related to the Ottati and Goss site be excluded from the calculation of defense costs.

### 3. *Should the Attorneys' Fees Related to the Hydrogeological Studies be Determined at this Time, or Must they Await a Determination of Which Investigative Studies were Necessary and Proper Defense Costs?*

Wausau has objected to certain attorney's fees related to the hiring and dealing with hydrogeological consultants.[3] This Court has determined that:

Defense costs include not only those reasonable and necessary to defeat or limit liability but also those costs, including consulting fees, that are reasonable and necessary to limit the scope and/or cost of remediation, even if similar or identical studies have been ordered by the government.

Order of January 17, 1992. The Court has further stated:

This Court exercises its discretion not to undertake the task of determining which consulting fees and hydrogeological studies are reasonable and proper defense costs since the underlying action initiated by the PRP letters have not yet been resolved. This Court will retain jurisdiction over these matters until the necessary facts and circumstances develop for a meaningful determination of this issue.

*Id.*

As noted in my earlier report, the policyholders' defense counsel, Sherilyn Young, and the policyholders' expert witness have stated that environmental defense lawyers traditionally utilize the types of hydrogeological studies undertaken in this case in order to defeat or limit liability. What complicates the issue concerning which hydrogeological studies are legitimate defense costs is the fact that these studies were ordered to be undertaken by the government, and not independently selected by the lawyer defending the policyholders in the environmental actions. Thus, it was believed that the determination of which hydrogeological studies constitute defense costs should be deferred until the additional facts and circumstances related to the ultimate resolution of the environmental actions are available for the Court's consideration.

The question now arises whether this Court should also defer consideration of

---

**3.** Wausau's Identification of Items of Attorneys' Fees Claims Which are Uncontested (September 12, 1991), indicates that not all attorney's fees related to the investigative studies are being contested.

which attorney's fees relating to the investigative studies should be allowed as defense costs. I do not believe it is also necessary to defer determination of which attorney's fees related to investigative costs should be included as defense costs. As I noted in my earlier report, the defense function and the costs of the defense do not end with the determination of liability, but rather the duty to defend includes the obligation, even for a party found to be liable, to limit the damages imposed upon that party or the scope of corrective measures that need to be undertaken by that party (*see* Report and Recommendation, at 1337 n. 13). In the traditional tort case, even where a defendant prevails at trial on the issue of liability, it is customary that a portion of an attorney's time was expended in anticipation of potential damages or injunctive relief. No one would question that these attorney's fees were reasonable defense costs necessary and proper to the adequate defense of the party.

One of Wausau's primary arguments for why the hydrogeological studies were remediation and not defense costs is that they were undertaken upon orders from various government agencies; in other words, the government chose these studies, not defense counsel. The government did not, however, order the policyholders to retain defense counsel. These attorneys were retained by the policyholders to defend their interests in negotiations and other dealings with the government agencies. It was the defense counsel who chose to provide certain legal services related to the hydrogeological studies, not the government. Defense counsel Young asserts that these legal services related to the environmental action.

Wausau has been aware of the environmental action and potential claims on Cardinal and Farmington since at least October 31, 1984. If Wausau did not want Sherilyn Young and her colleagues making the choices of how to use legal services to defend these actions, Wausau, under the contract, could have provided defense counsel for the policyholders. When specifically requested to provide that defense on January 6, 1986, Wausau again chose not to provide the defense counsel who could then have chosen how legal services would be provided.

Wausau rejected the policyholders' tender of defense. Had Wausau accepted the tender of defense and retained or appointed counsel to represent the policyholders, we would not today be struggling with a determination over which *attorneys' fees* were reasonable and necessary defense costs. This Court has determined that Wausau was legally obligated to provide the policyholders with a defense. This obligation would have required Wausau to provide counsel who could utilize independent professional judgment on behalf of the policyholders and undertake a zealous defense on their behalf in resisting or limiting the government's actions.[4]

In the present case, had Wausau fulfilled its contractual obligations to provide the policyholders with counsel who had exercised independent professional judgment on behalf of the client, such counsel would have determined the amount of legal service related to the investigative studies that he or she deemed necessary for the defense.[5] An independent counsel with loyalty to the policyholders could also have determined when legal services related to government-ordered investigative studies or other matters were not necessary to the

---

**4.** *See* Michigan Rule of Professional Conduct 1.7 and 1.8(f). As noted in the Comment to 1.7, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence.

**5.** The Michigan Committee on Professional and Judicial Ethics has made it clear that "[t]he

obligation of the attorney runs to the insured party rather than the insurer.... notwithstanding that the insurer is paying for such representation." Informal Opinion CI–866, Feb. 10, 1983. "If the interest of the insurer and insured in such case are in conflict, the attorney must advocate and represent the interest of the insured ... or withdraw." *Id. See also* Windt, *Insurance Claims and Disputes* § 4.20 (2d ed. 1988).

defense of the environmental action, and more appropriately should be undertaken by other counsel provided by the corporation. If Wausau had provided independent legal representation to the policyholders, and if it had concerns about that attorney providing legal or investigative services beyond those necessary to the defense, it could have used separate counsel to challenge such legal services at that time. Instead, Wausau did not provide defense counsel. The policyholders had to obtain their own defense counsel. That defense counsel made professional choices and asserts that the legal services provided with respect to the investigative studies were defense costs related to the environmental actions. Wausau now wishes to second guess that professional judgment.

■ Obviously, different defense lawyers will undertake different actions and may select different expert consultants to defend a case. There are wide parameters of reasonableness within which lawyers can exercise professional judgment about which tactics, strategies, and efforts are needed to defend a client. If, after refusing to providing a defense, an insurance carrier wishes to second guess the judgments of the defense counsel that was retained by the insured, it is the insurer's burden to demonstrate that the service provided was outside the parameters of this wide range of reasonable professional assistance.

Defense counsel Sherilyn Young has stated that the legal services itemized in the statements of defense costs were "rendered ... solely in connection with the environmental actions on the sites in issue."

Because the defense counsel for the policyholders have made professional choices as to what legal services were needed to defend against these environmental actions, the prima facie showing is now possible, as is any rebuttal by Wausau to show that no reasonable defense counsel should have made such a choice.[6] I find that on most attorney time entries the policyholders have made out a *prima facie* showing that these legal services were defense costs. Wausau now has the burden of going forward with submissions to counter this *prima facie* showing by demonstrating that no reasonable defense lawyer would have undertaken those services in defense of a client in such an environmental enforcement action.

B. WAUSAU'S OBJECTION TO SPECIFIC ITEMS AS DEFENSE COSTS

In Wausau's letter of November 20, 1989, it made the following objections:

1. *Cardinal Landfill Site*

—services rendered for "research relating to similar environmental litigation" are not sufficiently identified to determine which legal issues were researched.

—"attendance at EPA sponsored seminar relating to hazardous waste litigation" is general education, not a defense cost.

—attorneys' services billed for "review of results of hydrogeological sampling studies" and "work relating to hiring of environmental consultant" are administrative costs of remediation.

2. *Farmington Plant Site:*

—certain "discussions concerning Arthur Cardinal's status in litigation relating to

---

6. Regarding the hydrogeological studies, had Sherilyn Young made the choice to undertake a specific test before the government demanded it, I believe it is likely that the policyholders could at this time make a prima facie showing that such a test was a defense cost. Where the government makes the choice as to which hydrogeological studies are undertaken, not the attorneys, the policyholders need more to make out their proofs that these tests were defense costs. Stating that these types of tests are often selected by defense counsel, or asserting *hypothetically* that defense counsel would have chosen such a test if the government had not, are weaker proofs than the *actual* past choices of

defense counsel. It is for this reason that I recommended deferring consideration of the hydrogeological studies until the context of the resolution of these environmental actions is more fully developed. Yet, with respect to the attorneys fees related to these investigative studies, *defense counsel, not the government, has made the choice* as to what legal services to provide. We are dealing with *actual* decision made in the past, *not hypotheticals.* There is sufficient evidence presently available to make a determination of defense costs regarding legal fees, and this Court need not defer this decision for a fuller development of facts.

the Farmington Plant Site." (The policyholders contend that should have been billed under the Cardinal defense costs, and not the Farmington Plant Site.)

3. *Dover Landfill Site:*

—"discussions re: continuity of environmental consultants," "work on oversight of Dover Landfill Site Trust Fund of which Davidson Rubber Co. is trustee," "work on EPA-mandated progress reports," "discussions re: potential conflict of interest resulting from another PRP's—City of Dover—retention of counsel and consultants," and "proof of claims" are not defense costs.

In a letter of February 14, 1990, Wausau made the following objections and indicated each objection by code letters on a copy of the defense counsel's billing statements:

—amounts claimed for periodicals and seminars ("O");

—public relation efforts ("PR");

—attorney services related to the Union Chemical site, which is not an issue in this suit ("UC");

—attorney services rendered in connection with GZA consulting activities ("GZA");

—attorney services rendered to assist in compliance with government regulations, including drafting contracts, preparing budget estimates for capital expenditures, etc. ("COB");

—attorney services rendered in connection with the lagoon closure at the Farmington Plant site, because the policyholders withdrew all consultant fees relating to the lagoon closure itself ("LC");

—attorney services rendered in connection with the septic system at the Farmington Plant facility, because that was part of the plant's ordinary operations ("SS");

—any items relating to insurance coverage ("I");

—numerous invoices in the Dover and Keefe sites, which they assert are duplicative;

—attorney services rendered in connection with the policyholders' attempt to purchase the Cardinal Landfill property and the adjacent properties, asserting that these are costs of doing business ("PUR"); and

—entries for conferences, telephone conversations, and research that do not describe the topic and the purpose ("ND").

Wausau made clear that it is not contesting the hourly rates charged by the attorneys, nor the amount of time spent on individual tasks as stated in the invoices. Its contention is, however, that certain tasks do not relate to defense costs.

In its May 6, 1991, Response and Objections to the Policyholders' February 12, 1991, Supplemental Statement of Defense Costs, Wausau specifically objected to the following:

—attorneys fees incurred with sites identified in the billing statements as Springfield; Auburn Road; Londonderry, New Hampshire; Troy, Ohio; Savage Well; and the Koakley Landfill—sites not at issue in this litigation (with specific billing entries set out in Appendix A to their objections);

—attorney's fees expended in connection with the federal court declaratory judgment action (with items objected to are set out in Appendix B);

—attorney's fees incurred in connection with the preparation by outside accountants of routine corporate audit letters;

—income tax issues, and services relating to a trust account of the Dover Landfill;

—attorney's fees incurred to comply with permitting requirements; and

—costs of legal periodicals.

Wausau argues that in light of the significant number of clearly inappropriate entries, it cannot be presumed that entries with vague or general descriptions are related to any *bona fide* defense efforts by the policyholders. Accordingly, Wausau objects to all entries where the policyholders' attorneys failed to provide a sufficient description which would enable the Court to determine that the attorney's service was related to defense efforts at a relevant site involved in this litigation.

## C. Policyholders' Response to Wausau's Objections

In response to Wausau's objections to the initial Statement of Defense Costs, the policyholders withdrew a number of defense costs and gave more detailed explanations regarding several other items.

In response to Wausau's objections to the Supplemental Statement of Defense Costs, the policyholders assert that billing entries that mention other sites involved efforts to obtain and use information about the EPA's enforcement efforts at these other sites (*e.g.* models for consent decrees) that were similar to the three sites in which they were providing defense. Given the evolving state of environmental enforcement actions, the policyholders argue that agreements worked out at other sites involving similar issues are often the best "precedent" for dealing with the EPA or state environmental agencies.

With respect to the contention that the great number of billing irregularities should undermine the integrity of other billing entries that do not state with specificity the exact subject matter of the research or other service, the policyholders contend that the few incorrect entries that Wausau has identified, which the policyholders have withdrawn, were not significant in relation to the entire submission. Thus, the policyholders contend that the assertion by their counsel that these billings were undertaken in defense of environmental enforcement actions with respect to the three sites should make out a *prima facie* case for the Court which should prevail in the absence of more compelling counter-arguments by Wausau. They further contend that certain billing items which are not specific can, by their context, be determined to be defense costs. They note they have withdrawn numerous billings items without specific topics or descriptions that were unrelated to defense efforts.

The policyholders contend that the legal periodicals and seminars at issue dealt with emerging environmental law and were research costs necessary to the defense. They assert that the retention of hydrogeo-logical experts in the underlying action, including negotiating the terms of their contracts, is an essential part of the services provided by environmental defense lawyers. They assert that the reports and studies of the consultants indicate that they were performed as part of the policyholders' efforts to understand, analyze, counter, and control the ultimate cost of the government's attempts to require the policyholders to clean up the sites at issue in this litigation. It is for this reason that they seek the investigative costs and the attorneys fees associated with them. They contend further that the assistance of counsel and the client's preparation of estimates of the capital expenditure necessary to pay for the hydrogeological investigation or ultimate clean-up is essential to effective defense of these clean-up actions.

They also contend that the cooperation with the town of Farmington, through GZA, its consultants, with respect to hydrogeological investigation of the Sarah Greenfield property, which the town of Farmington owns, was essential to the policyholders' defense.

With respect to the objections dealing with cost of business, the policyholders have attempted to provide additional explanation to justify why these were legitimate defense costs in the present context. They acknowledge that defense costs would not include fees related to the federal court declaratory judgment action or to a general corporate audit or tax matters.

## D. Allocation

In footnote 1 of my earlier report and recommendation, I noted:

> Under the Court's Memorandum Order of July 31, 1987, granting partial summary judgment, *Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.*, 685 F.Supp. 621, 626 (E.D.Mich.1987), Wausau's pro rata share of defense costs is its period of coverage divided by the total period of the policyholder's *alleged* use of the site.

The Court, in accepting my report and recommendation with modification, did not modify that provision. Yet, it is not clear that either party objected to footnote 1.

The policyholders note that Judge John Feikens in a separate case, *Insurance Co. of N. America v. Forty–Eight Insulations, Inc.,* 451 F.Supp. 1230 (E.D.Mich.1978), *aff'd,* 633 F.2d 1212 (6th Cir.1980), *reh'g granted and opinion clarified,* 657 F.2d 814 (6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), recognized the allocation based upon the initial allegations of the complaint should prevail only until "pretrial discovery uncovers specific dates of exposure." *Id.* at 1245 n. 9.

The policyholders contend that Wausau, in the Joint Pre–Trial Statement, stated:

> The precise amount of such defense costs, however, cannot be finally determined at the Dover, Cardinal, and Farmington plant sites *until Judge Feikens rules in the indemnification portion of this case on the periods during which the environment was exposed to contaminants by the Policyholders.* Nevertheless, a preliminary determination as to the total amount of defense costs ..., *subject to Judge Feikens' determination of the periods of exposure, can be made based on the evidence already submitted.*

Joint Pre–Trial Statement, at 9–10 (emphasis added). The policyholders contend that Judge Feikens, in his August 30, 1991 opinion and order, made findings concerning the periods of exposure which should supersede the allocations set out in his May 18, 1987 opinion. Referring to various portions of the August 30, 1991 opinion, the policyholders conclude that the periods of exposure/use are:

| | | Wausau's Pro Rata Obligation | |
|---|---|---|---|
| Cardinal Landfill Site | 1967–1981 | 9/15 | (.6) |
| Farmington Plant Site | 1966–1984 | 9/19 | (.474) |
| Dover Landfill Site | 1961–1978 | 9/18 | (.5) |

Wausau has provided the Court with pro rata allocation based on dates of alleged exposure/use as follows:

| | | Wausau's Pro Rata Obligation | |
|---|---|---|---|
| Cardinal Landfill Site | 1965–present (8/30/90) | 9/26 | (.346) |
| Farmington Plant Site | 1967–present (8/20/90) | 9/24 | (.375) |
| Dover Landfill Site | 1955–1978 | 9/24 | (.375) |

Wausau also notes that in the August 30, 1991, opinion the Court found the periods of exposure at the Dover Landfill site were 1961–1979 and that the Farmington Plant site began operation in 1966, but the Court made no finding of fact as to the termination date.

The policyholders assert that if the dates of alleged use of the site are selected by the Court, the "present" should be 1985, the year of filing, not 1990. The choice of allocation formula should be determined by Judge Feikens, who did the trial in this case and who can better determine the appropriate dates of exposure/use for the allocation formula. All correspondence related to allocation is being filed simultaneously with this report and recommendation and will be provided to Judge Feikens.

E. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:

Having considered all of the submissions of counsel and argument, I propose the following findings of fact and conclusions of law:

1. No tender of defense was made by the policyholders as to the Ottati and Goss/Kingston Steel Drum Site, and thus for reasons stated and accepted by the Court's order of January 17, 1992, no legal services or hydrogeological studies related solely to that site are included as defense costs.

2. Legal services related to the federal court declaratory judgment action are not, as the policyholders acknowledge, defense costs.

3. The policyholders have failed to carry their burden of proving that legal services related to preparation of a corporate audit, income taxes, or related to administration of the trust account for the Dover Landfill site or to the purchase of a site are defense costs.

4. Legal services related to the Farmington lagoon closure are not, as the policyholders appear to acknowledge, defense costs.

5. Legal services undertaken to determine and evaluate how other entities on other sites negotiated and resolved issues similar to those encountered by the policyholders at the Cardinal Landfill, Farmington Plant, and Dover Landfill sites are legitimate defense costs.

6. Costs for legal periodicals, reporter services and other publications, and costs and lawyer time related to educational seminars are not separately payable as defense costs but are part of a law firm's overhead and educational expenses which are reflected in the attorneys' hourly billing rates and compensated through payment for other defense services at those hourly rates.

7. Costs for legal services related to determining whether a potential conflict of interest allows the firm to represent a new client is an administrative cost of the law firm and not a defense cost.

8. The policyholders have carried their burden of proving that the following legal services and costs, as calculated from the monthly billing statements, are defense costs for the Cardinal Landfill, Farmington Plant, and Dover Landfillsites from January 6, 1986 until August 30, 1990:

| | |
|---|---|
| Cardinal Landfill | $ 23,065.65 |
| Farmington Plant | $ 40,541.75 |
| Dover Landfill | $141,624.08 |

The computation and adjustments for billing entries that were not demonstrated to be defense costs are set out in Appendix "A".

7. Wausau is liable for that portion of defense costs for each side after this Court selects and applies its allocation formula.

Notice is hereby given that this Special Master's Report and Recommendation is being filed with the clerk of the court pursuant to Fed.R.Civ.P. 53(e)(1). Under Rule 53(e)(2), parties shall file written objections within ten (10) days after being served with this notice and report, or such objections may be waived. Application to the Court for action on this report and upon objections shall be by motion.

Dated: February 29, 1992.

### APPENDIX A

### DEFENSE COST CALCULATIONS AND KEY DESIGNATIONS

The Special Master has reviewed the defense cost submissions and, the attorney chronological time entries, all correspondence, and all pleadings of the parties related to the defense costs claimed. The listing below indicates the defense costs allowed and disallowed. The following key designations are used to explain why certain defense costs claimed were reduced or denied:

WD1 = Withdrawn as per Philip Barber ("PB") letter of 11/13/89 in response to Patricia St. Peter ("PSP") letter of 10/31/89.

WD2 = Withdrawn as per PB letter of 5/7/90 in response to PSP letter of 2/14/90.

DA1 = Downward adjustment based on PB letter of 11/13/89.

DA2 = Downward adjustment based on PB letter of 5/7/90.

D = Disallowed by the Special Master for failure of the policyholders to demonstrate this was a valid defense cost.

LC = Disallowed entry relating to Farmington Lagoon closure.

## CARDINAL LANDFILL SITE

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| 6/11/86 | $ 140.90 | | $ 140.90 |
| 7/25/86 | 325.50 | | 160.50 |
| | — 105.00 | 6/12/86 EHO (D) | |
| | — 60.00 | 6/16/86 TDR (DA2) | |
| 8/20/86 | 105.00 | | 0 |
| | — 105.00 | 7/1/86 EHO (D) | |
| 1/8/87 | 90.00 | | 90.00 |
| 2/6/87 | 192.95 | | 192.95 |
| 4/9/87 | 115.00 | | 115.00 |
| 5/8/87 | 44.00 | | 44.00 |
| 11/3/87 | 88.00 | | 88.00 |
| 12/2/87 | 189.40 | | 189.40 |
| 2/4/88 | 437.50 | | 437.50 |
| 2/29/88 | 101.44 | | 76.44 |
| | — 25.00 | 2/17/88 SBY (DA2) | |
| 3/28/88 | 100.00 | | 100.00 |
| 5/4/88 | 536.94 | | 536.94 |
| 6/3/88 | 37.14 | | 37.14 |
| 6/29/88 | 1,564.97 | | 1,350.47 |
| | — 50.00 | 6/13/88 SBY (WD1) | |
| | — 37.50 | 6/13/88 SBY (WD2) | |
| | — 25.50 | 6/13/88 CJM (WD2) | |
| | — 4.50 | 6/13/88 DWP (WD2) | |
| | — 37.50 | 6/13/88 SBY (WD2) | |
| | — 59.50 | 6/20/88 CJM (WD1) | |
| 8/4/88 | 3,324.53 | | 3,215.53 |
| | — 62.50 | 7/7/88 SBY (DA1) | |
| | — 9.00 | 7/22/88 DWP (WD1) | |
| | — 37.50 | 7/29/88 SBY (DA2) | |
| 9/9/88 | 4,435.30 | | 3,453.80 |
| | — 47.50 | 8/10/88 DMH (WD1) | |
| | — 62.50 | 8/10/88 SBY (WD1) | |
| | — 171.00 | 8/11/88 DMH (WD1) | |
| | — 133.00 | 8/15/88 DMH (WD1) | |
| | — 47.50 | 8/16/88 DMH (DA1) | |
| | — 95.00 | 8/18/88 DMH (DA1) | |
| | — 47.50 | 8/19/88 DMH (DA1) | |
| | — 100.00 | 8/22/88 SBY (WD1) | |
| | — 9.50 | 8/23/88 DMH (WD1) | |
| | — 25.00 | 8/24/88 SBY (DA1) | |
| | — 85.00 | 8/24/88 CJM (WD1) | |
| | — 18.00 | 9/1/88 DWP (D) | |
| | — 12.50 | 9/1/88 SBY (D) | |
| | — 127.50 | 9/2/88 CJM (D) | |
| | — 25.00 | 9/2/88 SBY (WD1) | |
| 10/7/88 | 479.57 | | 420.07 |
| | — 17.00 | 9/6/88 CJM (WD1) | |
| | — 42.50 | 9/19/88 CJM (WD1) | |
| 11/4/88 | 775.82 | | 614.32 |
| | — 119.00 | 9/30/88 CJM (D) | |
| | — 25.50 | 10/3/88 CJM (WD1) | |
| | — 17.00 | 10/4/88 CJM (WD1) | |
| 12/8/88 | 161.21 | | 161.21 |
| 1/5/89 | 1,056.62 | | 1,056.62 |

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| 2/3/89 | $ 1,279.52 | | $ 1,214.52 |
| | — 65.00 | 1/20/89 DWP (WD2) | |
| 3/3/89 | 1,611.00 | | 1,541.00 |
| | — 50.00 | 2/1/89 SBY (DA1) | |
| | — 20.00 | 2/6/89 DMH (WD1) | |
| 4/7/89 | 138.00 | | 108.00 |
| | — 30.00 | 3/22/89 DMH (WD1) | |
| 5/5/89 | 68.01 | | 68.01 |
| 6/29/89 | 95.79 | | 95.79 |
| 8/3/89 | 45.60 | | 45.60 |
| 9/1/89 | 676.92 | | 676.92 |
| 9/26/89 | 44.88 | | 44.88 |
| 11/2/89 | 672.28 | | 672.28 |
| 11/30/89 | 705.49 | | 705.49 |
| 1/8/90 | 143.25 | | 143.25 |
| 2/2/90 | 159.50 | | 159.50 |
| 3/2/90 | 517.99 | | 216.19 |
| | — 11.00 | 1/31/90 CMP (D) | |
| | — 43.50 | 2/6/90 SBY (D) | |
| | — 38.50 | 2/6/90 CMP (D) | |
| | — 33.00 | 2/7/90 KAC (D) | |
| | — 126.50 | 2/13/90 KAC (D) | |
| | — 11.00 | 2/14/90 AWS (D) | |
| | — 5.50 | 2/14/90 CMP (D) | |
| | — 16.50 | 2/14/90 KAC (D) | |
| | — 5.30 | 2/15/90 CMP (D) | |
| | — 11.00 | 2/20/90 AWS (D) | |
| 4/5/90 | 507.69 | | 418.19 |
| | — 27.50 | 2/27/90 CMP (D) | |
| | — 5.50 | 2/28/90 CMP (D) | |
| | — 29.00 | 3/7/90 SBY (D) | |
| | — 22.00 | 3/9/90 CMP (D) | |
| | — 5.50 | 3/22/90 CMP (D) | |
| 5/3/90 | 658.89 | | 658.89 |
| 6/4/90 | 1,521.52 | | 1,521.52 |
| 6/29/90 | 1,687.92 | | 1,687.92 |
| 8/3/90 | 390.30 | | 390.30 |
| 8/31/90 | 216.61 | | 216.61 |
| | $ 25,442.95 | | $23,065.65 |

## FARMINGTON PLANT SITE

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| 3/17/86 | $ 1,533.63 | | $ 1,213.38 |
| | — 21.00 | 12/18/85 SBY (D) | |
| | — 21.00 | 1/9/86 SBY (LC) | |
| | — 21.00 | 1/23/86 SBY (LC) | |
| | — 94.50 | 1/27/86 SBY (LC) | |
| | — 131.25 | 1/31/86 SBY (LC) | |
| | — 31.50 | 2/13/86 SBY (LC) | |
| 6/12/86 | 2,519.83 | | 1,226.83 |
| | — 31.50 | 3/20/86 EHO (WD2) | |
| | — 168.00 | 3/21/86 EHO (WD2) | |
| | — 157.50 | 3/26/86 EHO (WD2) | |
| | — 84.00 | 3/28/86 EHO (WD2) | |
| | — 157.50 | 3/11/86 EHO (WD2) | |
| | — 94.50 | 4/1/86 EHO (WD2) | |
| | — 84.00 | 4/2/86 EHO (WD2) | |
| | — 4.50 | 4/2/86 BHM (WD2) | |
| | — 84.00 | 4/3/86 EHO (WD2) | |
| | — 31.50 | 4/17/86 EHO (WD2) | |

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| | — $ 115.50 | 4/24/86 EHO (WD2) | |
| | — 18.00 | 5/7/86 JSB (WD2) | |
| | — 10.50 | 5/8/86 EHO (WD2) | |
| | — 21.00 | 3/18/86 EHO (WD2) | |
| | — 231.00 | 3/19/86 EHO (WD2) | |
| 7/25/86 | 752.57 | | $ 445.82 |
| | — 60.00 | 6/12/86 TDR (LC) | |
| | — 99.75 | 6/12/86 EHO (WD2) | |
| | — 21.00 | 6/15/86 EHO (WD2) | |
| | — 52.50 | 6/17/86 EHO (WD2) | |
| | — 21.00 | 6/25/86 EHO (WD2) | |
| | — 52.50 | 6/26/86 EHO (WD2) | |
| 8/20/86 | 153.75 | | 0 |
| | — 60.00 | 7/7/86 TDR (WD2) | |
| | — 84.00 | 7/25/86 EHO (WD2) | |
| | — 9.75 | Expenses (D) | |
| 9/9/86 | 49.36 | | 49.36 |
| 10/9/86 | 42.00 | | 0 |
| | — 42.00 | 9/24/86 SBY (WD2) | |
| 11/19/86 | 1,336.85 | | 954.59 |
| | — 31.50 | 10/3/86 SBY (WD2) | |
| | — 90.00 | 10/10/86 TDR (LC) | |
| | — 229.26 | 10/10/86 SBY (LC) | |
| | — 31.50 | 10/14/86 SBY (WD2) | |
| 1/9/87 | 931.88 | | 931.98 |
| 2/9/87 | 1,564.85 | | 1,520.85 |
| | — 44.00 | 1/19/87 SBY (WD2) | |
| 3/9/87 | 2,234.90 | | 2,201.90 |
| | — 11.00 | 2/5/87 SBY (WD2) | |
| | — 22.00 | 2/9/87 SBY (DA2) | |
| 4/9/87 | 1,130.53 | | 1,130.53 |
| 5/8/87 | 198.00 | | 0 |
| | — 198.00 | 4/15/87 SBY (LC) | |
| 5/28/87 | 44.00 | | 0 |
| | — 44.00 | 5/7/87 SBY (WD2) | |
| 6/26/87 | 985.85 | | 880.85 |
| | — 105.00 | 6/4/87 TDR (D) | |
| 7/31/87 | 153.58 | | 153.58 |
| 9/2/87 | 980.72 | | 756.22 |
| | — 4.50 | 8/10/87 DKW (WD2) | |
| | — 22.00 | 8/18/87 EHO (WD2) | |
| | — 33.00 | 8/20/87 SBY (WD2) | |
| | — 33.00 | 8/21/87 SBY (WD2) | |
| | — 33.00 | 8/21/87 SBY (WD2) | |
| | — 55.00 | 8/24/87 SBY (WD2) | |
| | — 22.00 | 8/25/87 SBY (WD2) | |
| | — 22.00 | 8/25/87 SBY (WD2) | |
| 9/25/87 | 497.55 | | 135.55 |
| | — 4.50 | 8/21/87 DKW (WD1) | |
| | — 55.00 | 9/8/87 SBY (WD2) | |
| | — 55.00 | 9/9/87 SBY (WD2) | |
| | — 9.00 | 9/14/87 DKW (D) | |
| | — 27.00 | 9/16/87 DKW (D) | |
| | — 18.00 | 9/17/87 DKW (WD2) | |
| | — 54.00 | 9/18/87 DKW (WD2) | |
| | — 4.50 | 9/21/87 DKW (WD2) | |
| | — 135.00 | 9/22/87 DKW (WD2) | |
| 11/3/87 | 622.08 | | 264.58 |
| | — 55.00 | 9/8/87 SBY (WD2) | |
| | — 55.00 | 9/9/87 SBY (WD2) | |
| | — 9.00 | 9/14/87 DKW (D) | |

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| | − $ 27.00 | 9/16/87 DKW (WD2) | |
| | − 18.00 | 9/17/87 DKW (WD2) | |
| | − 54.00 | 9/18/87 DKW (WD2) | |
| | − 4.50 | 9/21/87 DKW (WD2) | |
| | − 135.00 | 9/22/87 DKW (WD2) | |
| 12/2/87 | 747.34 | | $ 643.34 |
| | − 44.00 | 11/3/87 EHO (WD2) | |
| | − 18.00 | 11/13/87 DKW (WD2) | |
| | − 33.00 | 11/20/87 SBY (DA1) | |
| | − 4.50 | 11/20/87 DKW (D) | |
| | − 4.50 | 11/24/87 DKW (D) | |
| 1/7/88 | 177.72 | | 177.72 |
| 2/4/88 | 878.55 | | 878.55 |
| 2/29/88 | 404.31 | | 279.31 |
| | − 125.00 | 2/22/88 SBY (DA2) | |
| 3/28/88 | 306.44 | | 306.44 |
| 5/9/88 | 332.12 | | 194.62 |
| | − 50.00 | 4/15/88 SBY (D) | |
| | − 50.00 | 4/26/88 SBY (D) | |
| | − 37.50 | 4/27/88 SBY (D) | |
| 6/3/88 | 781.89 | | 781.89 |
| 6/29/88 | 538.70 | | 401.20 |
| | − 87.50 | 6/14/88 SBY (WD2) | |
| | − 50.00 | 6/20/88 SBY (WD2) | |
| 8/4/88 | 3,087.76 | | 1,402.76 |
| | − 87.50 | 7/15/88 SBY (DA2) | |
| | − 135.00 | 7/19/88 JVL (DA2) | |
| | − 351.00 | 7/21/88 JVL (LC) | |
| | − 202.50 | 7/25/88 JVL (WD2) | |
| | − 189.00 | 7/26/88 JVL (WD2) | |
| | − 351.00 | 7/28/88 JVL (WD2) | |
| | − 369.00 | 7/29/88 JVL (WD2) | |
| 9/9/88 | 1,219.54 | | 157.54 |
| | − 184.50 | 8/2/88 JVL (LC) | |
| | − 360.00 | 8/3/88 JVL (WD2) | |
| | − 364.50 | 8/4/88 JVL (WD2) | |
| | − 18.00 | 8/5/88 JVL (WD2) | |
| | − 135.00 | 8/17/88 JVL (WD2) | |
| 10/7/88 | 56.75 | | 31.75 |
| | − 25.00 | 9/19/88 SBY (DA2) | |
| 11/4/88 | 1,569.60 | | 1,569.60 |
| 12/8/88 | 652.51 | | 652.51 |
| 1/5/89 | 557.35 | | 557.35 |
| 2/3/89 | 2,288.31 | | 2,288.31 |
| 3/3/89 | 235.90 | | 235.90 |
| 4/7/89 | 97.61 | | 97.61 |
| 5/5/89 | 109.37 | | 109.37 |
| 6/2/89 | 27.00 | | 27.00 |
| 6/29/89 | 391.50 | | 391.50 |
| 8/3/89 | 1,402.71 | | 1,327.71 |
| | − 752.00 | Expenses (D) | |
| 9/1/89 | 204.10 | | 204.10 |
| 9/28/89 | 166.40 | | 166.40 |
| 11/2/89 | 87.46 | | 87.46 |
| 11/30/89 | 482.02 | | 482.02 |
| 1/8/90 | 44.20 | | 44.20 |
| 2/2/90 | 2,100.39 | | 1,787.89 |
| | − 5.50 | 1/4/90 CMP (D) | |
| | − 5.50 | 1/5/90 CMP (D) | |
| | − 29.00 | 1/15/90 SBY (D) | |
| | − 38.50 | 1/15/90 KAC (D) | |

| Billing Date | Defense Costs Claimed and Adjustments | | | Defense Costs Allowed |
|---|---|---|---|---|
| | — $ | 159.50 | 1/16/90 SBY (D) | |
| | — | 11.00 | 1/16/90 KAC (D) | |
| | — | 58.00 | 1/17/90 SBY (D) | |
| | — | 5.50 | 1/18/90 KAC (D) | |
| 3/2/90 | | 2,143.75 | | $ 2,072.75 |
| | — | 5.50 | 2/1/90 CMP (D) | |
| | — | 11.00 | 2/6/90 KAC (D) | |
| | — | 43.50 | 2/6/90 SBY (D) | |
| | — | 5.50 | 2/8/90 CMP (D) | |
| | — | 5.50 | 2/15/90 CMP (D) | |
| 4/5/90 | | 834.81 | | 761.81 |
| | — | 5.50 | 2/28/90 CMP (D) | |
| | — | 29.00 | 3/7/90 SBY (D) | |
| | — | 11.00 | 3/8/90 DMH (D) | |
| | — | 22.00 | 3/9/90 CMP (D) | |
| | — | 5.50 | 3/22/90 CMP (D) | |
| 5/3/90 | | 3,561.82 | | 2,940.32 |
| | — | 55.00 | 4/12/90 AWS (D) | |
| | — | 60.50 | 4/12/90 JCP (D) | |
| | — | 22.00 | 4/13/90 AWS (D) | |
| | — | 11.00 | 4/16/90 AWS (D) | |
| | — | 38.50 | 4/16/90 JCP (D) | |
| | — | 5.50 | 4/17/90 JCP (D) | |
| | — | 99.00 | 4/20/90 AWS (D) | |
| | — | 44.00 | 4/20/90 JCP (D) | |
| | — | 132.00 | 4/26/90 AWS (D) | |
| | — | 99.00 | 4/26/90 AWS (D) | |
| | — | 55.00 | 4/27/90 AWS (D) | |
| 6/4/90 | | 2,335.97 | | 2,335.97 |
| 6/29/90 | | 2,060.88 | | 2,060.88 |
| 8/3/90 | | 2,009.49 | | 2,009.49 |
| 8/31/90 | | 567.12 | | 567.12 |
| | $ | 48,166.42 | | $40,541.75 |

## DOVER LANDFILL SITE

| Billing Date | Defense Costs Claimed and Adjustments | | | Defense Costs Allowed |
|---|---|---|---|---|
| 6/12/86 | $ | 6.80 | | $ 6.80 |
| 7/24/86 | | 281.50 | | 281.50 |
| 8/20/86 | | 465.00 | | 255.00 |
| | — | 105.00 | 7/1/86 SBY (D) | |
| | — | 105.00 | 7/1/86 EHO (D) | |
| 9/9/86 | | 91.25 | | 91.25 |
| 10/9/86 | | 150.00 | | 150.00 |
| 1/8/87 | | 142.00 | | 142.00 |
| 3/9/87 | | 2,245.50 | | 2,245.50 |
| 4/9/87 | | 1,983.73 | | 1,943.73 |
| | — | 22.00 | 3/17/87 SBY (WD2) | |
| | — | 18.00 | 3/26/87 JSB (WD2) | |
| 5/19/87 | | 2,333.75 | | 2,333.75 |
| 5/28/87 | | 220.93 | | 220.93 |
| 6/26/87 | | 1,207.71 | | 1,207.71 |
| 7/31/87 | | 1,960.92 | | 1,960.92 |
| 9/2/87 | | 1,142.36 | | 1,142.36 |
| 9/25/87 | | 1,997.63 | | 1,997.63 |
| 11/3/87 | | 6,413.19 | | 6,413.19 |
| 12/2/87 | | 2,245.54 | | 2,245.54 |
| 1/7/88 | | 2,288.19 | | 2,288.19 |
| 2/4/88 | | 6,779.69 | | 6,770.69 |

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| | — $ 9.00 | 1/12/88 DWP (D) | |
| 2/29/88 | 9,588.10 | | $9,588.10 |
| 3/28/88 | 7,510.60 | | 7,510.60 |
| 5/4/88 | 5,418.57 | | 5,306.07 |
| | — 112.50 | 4/7/88 SBY (WD2) | |
| 6/3/88 | 2,236.09 | | 2,236.09 |
| 6/29/88 | 2,635.16 | | 2,635.16 |
| 8/4/88 | 7,424.88 | | 7,004.88 |
| | — 50.00 | 7/6/88 EHO (D) | |
| | — 287.50 | 7/19/88 SBY (WD2) | |
| | — 82.50 | 7/20/88 GJH (D) | |
| 9/9/88 | 4,152.81 | | 4,059.81 |
| | — 25.00 | 8/10/88 SBY (D) | |
| | — 50.00 | 9/2/88 SBY (D) | |
| | — 18.00 | 9/2/88 TAD (D) | |
| 10/7/88 | 1,449.61 | | 1,024.61 |
| | — 90.00 | 7/22/88 TAD (D) | |
| | — 90.00 | 9/6/88 JSB (D) | |
| | — 67.50 | 9/7/88 JSB (D) | |
| | — 90.00 | 9/20/88 JSB (D) | |
| | — 87.50 | 9/26/88 SBY (D) | |
| 11/4/88 | 1,510.25 | | 1,458.25 |
| | — 26.00 | 10/17/88 JMW (D) | |
| | — 26.00 | 10/20/88 JMW (D) | |
| 12/8/88 | 1,353.07 | | 1,278.07 |
| | — 75.00 | expense (D) | |
| | — 13.50 | 11/15/88 JSB (D) | |
| | — 36.00 | 11/21/88 JSB (D) | |
| | — 25.00 | 11/21/88 SBY (D) | |
| | — 67.50 | 11/23/88 JSB (D) | |
| | — 36.00 | 11/28/88 JSB (D) | |
| 1/5/89 | 1,513.44 | | 1,115.94 |
| | — 13.50 | 12/5/88 JSB (D) | |
| | — 175.00 | 12/8/88 SBY (D) | |
| | — 25.00 | 12/8/88 EHO (D) | |
| | — 30.00 | 12/12/88 TDR (D) | |
| | — 19.00 | 12/13/88 AMK (D) | |
| | — 25.00 | 12/15/88 EHO (D) | |
| | — 95.00 | 12/20/88 AMK (D) | |
| | — 15.00 | 12/20/88 JWH (WD2) | |
| 2/3/89 | 2,019.29 | | 1,819.29 |
| | — 50.00 | 1/11/89 AMK (D) | |
| | — 150.00 | 1/11/89 JSB (D) | |
| 3/3/89 | 1,260.57 | | 920.57 |
| | — 100.00 | 1/26/89 JMS (D) | |
| | — 100.00 | 2/13/89 JMS (D) | |
| | — 40.00 | 2/14/89 JMS (D) | |
| | — 100.00 | 2/26/89 JMS (D) | |
| 4/7/89 | 2,646.17 | | 2,447.67 |
| | — 50.00 | 3/20/89 JMS (D) | |
| | — 50.00 | 3/21/89 JMS (D) | |
| | — 15.00 | 3/22/89 NAM (D) | |
| | — 75.00 | 3/22/89 JMS (D) | |
| | — 8.50 | 3/24/89 JWH (D) | |
| 5/5/89 | 528.74 | | 230.74 |
| | — 135.00 | 4/9/89 SBY (D) | |
| | — 54.00 | 4/10/89 SBY (D) | |
| | — 34.00 | 4/10/89 JWH (D) | |

| Billing Date | Defense Costs Claimed and Adjustments | | Defense Costs Allowed |
|---|---|---|---|
| | – $ 50.00 | 4/10/89 WFA (D) | |
| | – 25.00 | 4/11/89 WFA (D) | |
| 6/2/89 | 461.25 | | $ 461.25 |
| 6/29/89 | 474.49 | | 324.49 |
| | – 150.00 | 6/16/89 JMS (D) | |
| 8/3/89 | 1,834.25 | | 747.75 |
| | – 60.00 | 7/13/89 WFA (D) | |
| | – 850.50 | 7/18/89 SBY (D) | |
| | – 81.00 | 7/19/89 JMB (D) | |
| 9/1/89 | 1,205.25 | | 998.25 |
| | – 166.50 | 8/16/89 TAD (D) | |
| | – 40.50 | 8/15/89 TAD (D) | |
| 9/28/89 | 205.53 | | 156.03 |
| | – 36.00 | 9/6/89 JMB (D) | |
| | – 13.50 | 9/7/89 JMB (D) | |
| 11/2/89 | 1,610.09 | | 1,458.09 |
| | – 58.50 | 10/10/89 JMB (D) | |
| | – 93.50 | 10/26/89 JVL (D) | |
| 11/30/89 | 3,337.81 | | 3,125.81 |
| | – 72.00 | 11/15/89 JMB (D) | |
| | – 140.00 | 11/22/89 LD (D) | |
| 1/8/90 | 3,485.41 | | 3,485.41 |
| 2/2/90 | 5,246.40 | | 5,081.40 |
| | – 5.50 | 1/4/90 CMP (D) | |
| | – 5.50 | 1/5/90 CMP (D) | |
| | – 88.00 | 1/12/90 JMB (D) | |
| | – 38.50 | 1/16/90 KAC (D) | |
| | – 11.00 | 1/16/90 KAC (D) | |
| | – 11.00 | 1/17/90 KAC (D) | |
| | – 5.50 | 1/18/90 KAC (D) | |
| 3/2/90 | 4,160.45 | | 4,138.45 |
| | – 16.50 | 1/31/90 CMP (D) | |
| | – 5.50 | 2/14/90 CMP (D) | |
| 4/5/90 | 8,644.02 | | 8,571.02 |
| | – 5.50 | 2/28/90 CMP (D) | |
| | – 29.00 | 3/7/90 SBY (D) | |
| | – 22.00 | 3/8/90 CMP (D) | |
| | – 11.00 | 3/8/90 DMH (D) | |
| | – 5.50 | 3/19/90 CMP (D) | |
| 5/3/90 | 8,324.89 | | 8,324.89 |
| 6/4/90 | 7,387.87 | | 7,267.87 |
| | – 87.00 | 5/4/90 SBY (D) | |
| | – 33.00 | 5/4/90 JMB (D) | |
| 6/29/90 | 12,552.85 | | 11,727.85 |
| | – 803.00 | 6/11/90 AWS (D) | |
| | – 22.00 | 6/14/90 JMB (D) | |
| 8/3/90 | 5,102.14 | | 4,887.64 |
| | – 22.00 | 6/14/90 JMB (D) | |
| | – 33.00 | 6/29/90 AWS (D) | |
| | – 159.50 | 7/15/90 JMB (D) | |
| 8/31/90 | 713.34 | | 713.34 |
| | $ 149,749.08 | | $141,624.08 |

APPENDIX B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Fireman's Fund Insurance Companies
and American Insurance
Company, Plaintiffs,

vs.

Ex–Cell–O Corporation, et al., Defendants.

Civil Action No. 85–CV–71371–DT

Honorable JOHN FEIKENS

Honorable STEVEN D. PEPE

CORRESPONDENCE RELATED TO
ATTORNEY FEES AND COST
SOUGHT AS DEFENSE COSTS
WHICH WERE CONSIDERED BY
THE COURT IN ITS DETERMINA-
TION OF DEFENSE COSTS

1. Letter dated October 31, 1989 to Phil-
ip Barber from Patricia St. Peter
2. Letter dated November 13, 1989 to
Patricia St. Peter from Philip Barber
3. Letter dated November 20, 1989 to
Philip Barber from Patricia St. Peter
4. Letter dated November 22, 1989 to
Patricia St. Peter from Philip Barber
5. Letter dated February 14, 1990 to
Philip Barber from Patricia St. Peter
6. Sealed matter regarding document
#5 (letter dated February 14, 1990)
7. Letter dated May 7, 1990 to Patricia
St. Peter from Philip Barber
8. Certification dated 2/26/92 of Sheri-
lyn Young
9. Letter dated May 14, 1991 to Magis-
trate Judge Pepe from Philip Barber
10. Objections to Certification of Sheri-
lyn Young by Patricia St. Peter
11. Letter dated February 27, 1992 to
Magistrate Judge Pepe from Philip
Barber