[No. D036401. Fourth Dist., Div. One. Oct. 4, 2002.]

BARRATT AMERICAN, INC., Plaintiff and Appellant, v. TRANSCONTINENTAL INSURANCE COMPANY, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the part entitled BARRATT'S CROSS-APPEAL.

**COUNSEL**

Payne & Fears, Scott S. Thomas and J. Kelby Van Patten for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Sherman M. Spitz, Lance A. LaBelle, David B. Ezra, Heather C. Whitmore; Greines, Martin, Stein & Richland, Irving H. Greines and Marc J. Poster for Defendant and Appellant.

**OPINION**

**HALLER, J.**—A residential developer, Barratt American, Inc. (Barratt), sued its insurer, Transcontinental Insurance Company (Transcontinental),

alleging Transcontinental failed to provide it with a defense in an underlying construction defect lawsuit. At trial, it was undisputed that Transcontinental owed Barratt a duty to defend. The primary issue for the jury was whether costs Barratt incurred to repair homes owned by individuals who did not join the underlying construction defect lawsuit qualified as recoverable defense costs. After a lengthy trial, the jury found the costs were recoverable defense costs, and Barratt was not barred from recovering the costs by having failed to obtain Transcontinental's consent to incur them. The court awarded Barratt $580,714.50, with a credit of $19,649.84.

Both parties appeal. Transcontinental contends: (1) the claimed defense costs are not recoverable as a matter of law; (2) insufficient evidence supports the judgment as to the existence and amount of the defense costs; (3) the court erroneously instructed the jury on defense cost issues; and (4) the court erred in failing to reduce the judgment amount to reflect Transcontinental's share of the defense costs. Barratt contends: (1) the court erred in granting a directed verdict determining as a matter of law that Barratt did not tender the defense until June 1997; and (2) the court erred in failing to award prejudgment interest.

We reject Transcontinental's contention the claimed defense costs are not recoverable as a matter of law. In a construction defect lawsuit involving a residential development where only a portion of the homeowners join the lawsuit, the developer is not barred as a matter of law from recovering from its liability insurer the costs to repair the homes owned by the nonplaintiffs if the costs are reasonable and necessary to defend the lawsuit that was filed. But we agree the factual record is insufficient to support the conclusion it was reasonable and necessary for Barratt to spend $580,714.50 in repairing nonplaintiff homes to defend the underlying litigation. We therefore reverse this portion of the judgment. To provide guidance in the event of a retrial, we briefly discuss Transcontinental's asserted instructional errors. In the unpublished portion of the opinion we additionally conclude that the trial court properly granted a directed verdict finding that Barratt first tendered the defense of the underlying lawsuit to Transcontinental in June 1997.

## FACTUAL SUMMARY

Barratt developed a tract of homes known as the Cortina project, consisting of 208 homes based on four floor plans, using numerous subcontractors. With respect to this project, Barratt was covered by its own primary and excess liability insurance policies, and was also a named additional insured on many of the insurance policies issued to its subcontractors. Barratt's roofing subcontractor, Bernard Roofing, obtained a policy from Transcontinental that named Barratt as an additional insured with respect to liability arising out of Bernard Roofing's work.

In May 1996, about 70 Cortina homeowners sued Barratt for numerous construction defects in their homes, and Barratt cross-complained against its subcontractors, including Bernard Roofing. Barratt retained the law firm of Edwards, Sooy & Byron. On June 6, 1996, Barratt's attorneys tendered the claim to its direct carriers and to some of its additional insured carriers, but not to Transcontinental. Several insurers acknowledged their duty to defend, and one insurer, Gerling America Insurance Company (Gerling), agreed to provide a defense.

Shortly thereafter, Barratt representatives met with Barratt's attorneys and made a decision that Barratt would voluntarily offer to repair defects in the residences of the homeowners who had not yet joined the lawsuit. Barratt employee, Bruce Mezan, directed this repair effort by contacting every nonplaintiff Cortina homeowner, "to ask them . . . if we could come in their home and take a look around and see if there are any issues that we could help them with." Barratt paid for hundreds of these repairs, including such items as locks, showers, windows, carpet, handrails, doors, drainage systems, cabinets, and garage doors. By June 1997, Barratt had incurred $514,685.33 in costs to repair items in the nonplaintiff homes.

On June 30, 1997, one year after the initial tender to Gerling, Barratt (in its capacity as an additional insured) tendered the defense of the Cortina action to Transcontinental. At the time, Gerling was continuing to provide a defense, but was overdue in paying Barratt's attorney fee bills. Transcontinental acknowledged the tender letter, but did not expressly respond to the tender by agreeing it had a duty to defend.

In June 1998, Transcontinental's claims representative orally acknowledged that Transcontinental may have "some limited" duty to defend. At this time, the parties and the numerous insurers were attempting to reach a global settlement of the Cortina action. In early July 1998, Transcontinental participated in a mediation with Barratt and several other insurers. Transcontinental and Barratt were far apart on the amount of indemnity owed for the roofing defects, and Transcontinental's claims representative refused to offer any money on the defense obligation, claiming Transcontinental was responsible to pay for the defense only as it related to the roofing claims.

Two weeks later, on July 17, 1998, Barratt filed the lawsuit that is the subject of this appeal. Barratt sued Transcontinental for declaratory relief, breach of the duty to defend, and bad faith. Barratt alleged that although Transcontinental acknowledged it had a duty to defend Barratt in the lawsuit, Transcontinental "failed and refused to pay any portion of the substantial defense costs that it incurred defending the Lawsuit," and was wrongfully

asserting that it had a duty to defend only those claims in the lawsuit that involved the specific work that the roofing subcontractor performed.

Two months later, in September 1998, the parties reached a global settlement of the Cortina plaintiffs' claims for $1.9 million. Transcontinental contributed $250,000 to the settlement, and it was undisputed at trial that this was Bernard Roofing's fair share of the liability portion of the settlement. Transcontinental also contributed $129,297.45 toward the cost of the defense that had been provided by Gerling. But Barratt refused to release Transcontinental because Transcontinental declined to pay for the repair costs relating to the nonplaintiff homes; these costs totaled approximately $1.1 million, $580,714.50 of which was incurred after the June 1997 tender date.[2] Barratt, however, released all of its other insurers, even though they were potentially liable for these repair costs under the same theory asserted against Transcontinental.

Barratt subsequently dismissed its bad faith claim against Transcontinental and proceeded with the lawsuit based solely on its claim that it was entitled to recover from Transcontinental all of the costs incurred in repairing the nonplaintiff homes (the $1.1 million). In a pretrial order, the trial court rejected Transcontinental's argument that its insurance policy required that it provide a defense only of the roofing claims. The court also denied Transcontinental's numerous pretrial and trial motions in which Transcontinental contended the repair costs relating to the nonplaintiff homes could not be considered a valid defense cost because the California Supreme Court has held that an insurer has no duty to defend against a claim asserted by a third party unless that party filed a lawsuit in a court proceeding. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 883 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*).) Relying on *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38 [70 Cal.Rptr.2d 118, 948 P.2d 909], the trial court ruled that the repair costs were recoverable if they constituted investigative expenses that a reasonable insured would have undertaken to minimize or defend against liability in the Cortina action.

To meet this test at trial, Barratt relied primarily on the testimony of two of its attorneys in the underlying construction defect lawsuit, John Simpson and Richard Sooy, who participated in devising Barratt's strategy to voluntarily repair nonplaintiff Cortina homes. Both attorneys acknowledged that one purpose of the repair effort was to discourage the nonplaintiff homeowners from joining the Cortina lawsuit and thus to minimize Barratt's total

[2] Although the record is contradictory whether this posttender amount is $586,714.50 or $580,714.50, we use the latter amount because it is the amount adopted by the court and the parties at the end of trial.

exposure in the action. But these attorneys said a second purpose of the repair effort was to develop useful information to assist in Barratt's defense of the ongoing Cortina litigation.

With respect to this latter purpose, the attorneys testified that by investigating the problems identified at nonplaintiff homes, Barratt could potentially achieve several defense objectives, including: identifying early in the litigation which plaintiff claims were legitimate and which were spurious or exaggerated; devising effective and economical repair solutions for the legitimate claims; and obtaining evidence of the satisfactory performance of alternative repair methods to rebut plaintiffs' later claims. These attorney witnesses explained that the nature of civil litigation and discovery rules made it difficult to achieve these objectives if they were limited to inspecting plaintiff homes. They cited several reasons for this conclusion: (1) it is difficult to learn the precise nature of the alleged defects early in litigation because construction defect complaints usually assert vague allegations with no useful details; (2) a developer cannot inspect the plaintiffs' homes until the parties obtain a case management order, which may not be entered for a substantial period after the lawsuit is filed and which often limits the time and manner of home inspections, particularly to perform essential destructive testing; (3) formal discovery rules require that a plaintiff representative accompany a defense inspector and this hampers a defendant's ability to perform an effective inspection of the alleged defects; and (4) formal discovery rules do not give developers an opportunity to test their repair methodology to determine whether a less expensive repair would be effective. The attorney witnesses testified that by actually conducting the less expensive repairs on homes of nonparties, a defendant would have the ability to obtain information to effectively refute the plaintiffs' arguments that these types of repairs would not work.

Barratt also relied on the testimony of project manager Mezan, who identified a chart (exhibit No. 257) that listed each vendor who participated in the repair work of the nonplaintiff homes, a general description of the work, and the total cost of the work with respect to each category. Mezan testified that all of the vendors listed on exhibit No. 257 performed work that was part of the effort to gather information in defense of the lawsuit and that he consulted with Barratt's attorneys during this repair process. At trial, Barratt sought to recover from Transcontinental the total amount listed on the chart (the $1.1 million).

Barratt also sought to establish that the repair effort constituted a necessary and reasonable defense cost through the testimony of John Landry, an architect who was Barratt's lead construction expert in the underlying

litigation. Although Landry acknowledged he was not involved in any inspections or repairs of the nonplaintiff homes, he testified that when he became aware of this effort shortly after he was retained in November 1996, he devised a strategy that would "take advantage" of the information gleaned from this process. He testified the repairs would have been "helpful" to Barratt's defense because they could provide "more data and information," a "larger sample size," and a way to evaluate "real world solutions to defective conditions." Landry said the information derived from the repair work never actually benefited the defense because the case settled before the information was needed for depositions and/or trial.

In response, Transcontinental argued that Barratt's evidence was not credible because Barratt never asked Transcontinental or any of its other insurers to reimburse it for this repair effort, demonstrating that Barratt did not consider the repairs to be a defense cost in the Cortina lawsuit until after it completed the repairs. Transcontinental additionally called an expert witness who opined the repair costs were not necessary to Barratt's defense and were not reasonable defense costs.

At the conclusion of the trial, the court granted a directed verdict in Transcontinental's favor with respect to the date of tender, finding the undisputed evidence showed that Barratt tendered the defense of the Cortina action to Transcontinental on June 30, 1997. The court thus ruled Barratt was entitled, at most, to recover the total repair costs incurred after the June 1997 tender date ($580,714.50).

The court then provided the jury with a verdict form that contained four special interrogatories. In response to the first three interrogatories, the jury found Barratt established by a preponderance of the evidence that: (1) "the expenses incurred in connection with the houses not involved in the Cortina lawsuit were 'defense costs . . .' "; (2) Barratt did not obtain consent from Transcontinental to incur these expenses; and (3) Barratt was excused from obtaining consent to incur these costs because Transcontinental breached its duty to defend. In response to the fourth interrogatory, the jury found Transcontinental failed to establish its waiver defense by clear and convincing evidence.

Based on these responses and after denying Transcontinental's four postverdict motions, the court entered judgment in Barratt's favor for $580,714.50 (the total amount of costs incurred by Barratt to repair the nonplaintiff homes between the time of the June 1997 tender to the settlement date) minus $19,649.84 for an amount awarded on Transcontinental's cross-complaint. The court also found in Barratt's favor on its declaratory

relief claim, concluding that Transcontinental had a duty to fully defend Barratt against all claims in the Cortina lawsuit, including both covered (roofing) and noncovered (other defect) claims. The court then denied Transcontinental's postjudgment motions.

TRANSCONTINENTAL'S APPEAL

In resolving Transcontinental's appellate contentions, we first summarize the legal principles governing an insured's recovery of defense costs from an insurer that breached its duty to defend the insured. We then address Transcontinental's contentions that Barratt is not entitled to recover the repair costs as a matter of law, and alternatively that the jury's findings were not supported by the evidence. Finally, we discuss Transcontinental's additional arguments regarding the jury instructions.

### I. Applicable Law on Recoverable Defense Costs

■ It has long been held that when an insurer breaches a duty to defend, the damages the insured is entitled to recover may include the reasonable costs of defending the underlying action. (See *Arenson v. National Auto. & Cas. Ins. Co.* (1957) 48 Cal.2d 528, 537 [310 P.2d 961].) In *Aerojet-General Corp. v. Transport Indemnity Co., supra,* 17 Cal.4th 38 (*Aerojet-General*), the California Supreme Court applied this general principle in an action concerning insurance coverage for liability based on hazardous waste disposal. In that case, the insured discharged hazardous substances, causing property damage to its own and adjacent property. (*Id.* at p. 46.) The insured was sued by numerous entities, including the State of California and the United States, and thereafter spent approximately $26 million in "site investigation expenses" to investigate the extent of the contamination and the viability of cleanup options, and to monitor the spread of waste from the site. (*Id.* at pp. 47, 52.) In a lawsuit in which the insured was seeking to recover indemnity and defense costs from the insurer, the trial court instructed the jury that the insured's investigation costs did not include recoverable defense costs " 'even if [the insured's] lawyers used information developed during the investigation to assist them in negotiating with the governments to limit [the insured's] obligations to clean up and to remediate.' " (*Id.* at p. 51.)

The California Supreme Court held this instruction was erroneous because it precluded the jury from finding "reasonable and necessary" investigative costs incurred to minimize or avoid liability were recoverable as defense costs. (*Aerojet-General, supra,* 17 Cal.4th at pp. 60-68.) The court made clear, however, that these costs were not recoverable unless they satisfied the "reasonable and necessary" test, and were incurred after tender and before

the conclusion of the litigation. (*Id.* at pp. 60-61.) In the Supreme Court's words, because an insurer "must undertake reasonable and necessary efforts to avoid or at least minimize liability[,] . . . [¶] [i]t follows that the insured's site investigation expenses constitute defense costs that the insurer must incur in fulfilling its duty to defend if, and only if, the following requirements are satisfied. First, the site investigation must be conducted within the temporal limits of the insurer's duty to defend, i.e., between tender of the defense and conclusion of the action. Second, the site investigation must amount to a reasonable and necessary effort to avoid or at least minimize liability. Third and final, the site investigation expenses must be reasonable and necessary for that purpose." (*Ibid.*) The court stated that the issue whether the insured's investigation and investigation expenses are reasonable and necessary "must be assessed under an objective standard," and the subjective motivations of the insured and/or its attorneys are not relevant in the analysis. (*Id.* at pp. 62-63.)

Two additional aspects of the *Aerojet-General* court's analysis are of particular relevance here. First, the *Aerojet-General* court stated the fact that the site investigation expenses may be characterized as CERCLA[3] "response costs," which are considered "damages" within the meaning of a standard liability policy (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 837 [274 Cal.Rptr. 820, 799 P.2d 1253]), does not mean that the expenses cannot also be characterized as defense costs. (*Aerojet-General, supra,* 17 Cal.4th at pp. 65-66.) The court explained that "[a]ny assumption that site investigation expenses cannot do double duty [as both indemnification costs and defense costs] is unsupported and hence must be rejected." (*Id.* at p. 66.) Second, the *Aerojet-General* court rejected the insurer's arguments that the fact an insured obtains collateral benefits from the defense investigation expenditures means that the costs lose their status as recoverable defense costs. (*Ibid.*) The court explained: "If site investigation expenses must be incurred by the insurer in fulfilling its duty to defend the insured, they must be incurred. The insurer gives, and the insured gets, what they bargained for. Even if the insured may happen to derive some added benefit, the insurer does not shoulder any added burden. The insurer may not be heard to complain." (*Ibid.*)

## II. *Transcontinental's Contentions*

### A. *The Recovery of the Repair Costs Is Not Barred as a Matter of Law*

■ Transcontinental initially contends the judgment must be reversed because the claimed repair costs do not constitute recoverable defense costs.

---

[3]CERCLA is the acronym for Comprehensive Environmental Response, Compensation and Liability Act of 1980, a federal environmental law authorizing government recovery of the cost of removing hazardous waste and restoring affected property. (See 42 U.S.C. § 9601 et seq.)

Transcontinental maintains that because these expenses were incurred to repair the homes of third parties who did not file suit, the repair costs cannot, as a matter of law, qualify as defense costs. In support of this argument, Transcontinental relies on *Foster-Gardner, supra,* 18 Cal.4th 857, decided one year after *Aerojet-General.*

 In *Foster-Gardner,* the California Supreme Court interpreted a standard liability insurance provision similar to the one before us, providing that the insurer " 'shall have the right and duty to defend any *suit* against the insured seeking damages [for] . . . bodily injury or property damage . . . .' " to mean that a defense duty is not triggered until a third party files a complaint against the insured in a court proceeding. (*Foster-Gardner, supra,* 18 Cal.4th at pp. 863, 878-888, italics added.) Although the court recognized that "early intervention in a dispute outside the civil action context may reduce any indemnity for which the insurer is ultimately held liable," it concluded that this principle did not affect the interpretation of the relevant insurance contract language. (*Id.* at p. 883.) The court reasoned that although an insurance company may voluntarily agree to pay costs before a suit is filed to reduce its ultimate exposure, the policy language does not require it to do so and instead "this is a judgment call left solely to the insurer . . . ." (*Ibid.*) Three years later, the California Supreme Court applied this reasoning to conclude that an insurer's duty to indemnify for " 'all sums that the insured becomes legally obligated to pay as damages' " is limited to money ordered by a court and therefore is not triggered until after a lawsuit is filed and resolved. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 960 [103 Cal.Rptr.2d 672, 16 P.3d 94] (*Powerine*).)

 The parties agree that, under *Foster-Gardner* and *Powerine,* the costs incurred in repairing the nonplaintiff Cortina homes were not recoverable under Transcontinental's indemnity obligation, even if the defects requiring the repairs were caused by the negligence of Transcontinental's insureds (Barratt or Bernard Roofing). Because *those* homeowners never filed suit against Barratt, no duty to indemnify on Transcontinental's part was triggered. (See *Powerine, supra,* 24 Cal.4th 945.) Similarly, Transcontinental had no duty to pay the repair amounts as a cost to defend the nonplaintiff construction defect claims because those costs were incurred voluntarily without a complaint being filed against Barratt by the affected homeowners. (*Foster-Gardner, supra,* 18 Cal.4th at p. 886.)

But these principles do not mean the costs voluntarily incurred by Barratt cannot constitute recoverable investigation expenses to defend *the Cortina lawsuit.* To the contrary, in reaching its conclusion, *Foster-Gardner* expressly reaffirmed *Aerojet-General*'s holding that an insurer has a duty to

pay defense costs if the costs are incurred between tender and settlement of a lawsuit, and if the defense investigation and expenses are " 'reasonable and necessary' " to mount a defense in a pending lawsuit. (*Foster-Gardner, supra,* 18 Cal.4th at p. 886.) Under *Aerojet-General,* a liability insurer must bear these defense costs even if the insured obtains additional benefits from the expenditures, and even if the same costs could potentially be characterized as an indemnification cost in a different context. (*Aerojet-General, supra,* 17 Cal.4th at pp. 65-66.)

As applied here, these principles mean that the costs incurred by Barratt are potentially recoverable even though they may serve more than one objective. If Barratt's expenditures qualify as defense costs in the Cortina action, they do not lose that status merely because the costs are not independently recoverable based on the nonplaintiff property damage claims. Under *Aerojet-General* and *Foster-Gardner,* the critical issue is whether the costs were reasonably and necessarily incurred in defense of an existing lawsuit. If the investigation costs satisfy this test, they are recoverable even if the payments of these costs benefited a third party who did not file suit against the insured.

We reject Transcontinental's additional argument that *Aerojet-General* limits the recovery of defense costs to costs spent to investigate the particular location that is the subject of the pending litigation. As explained above, *Aerojet-General* was merely a specific application of well-established law that reasonable and necessary costs of defending a lawsuit are recoverable if the insurer breaches its duty to defend. There is nothing in this law that limits the type of defense costs to costs spent on investigating or repairing the particular site that is the subject of the lawsuit. If a jury concludes on a proper record that an investigation is a reasonable and necessary effort to gather evidence and information to defend a lawsuit, it does not matter that this investigation took place at a location different from the pending litigation.

We conclude that recovery of Barratt's costs for repairs to nonplaintiff homes was not barred as a matter of law under the *Aerojet-General* or *Foster-Gardner* decisions.

B. *Insufficient Evidence Supports Finding That Repairs Were Reasonable and Necessary*

Transcontinental alternatively contends the judgment must be reversed because insufficient evidence supports the jury's conclusions that the repairs to the nonplaintiff homes constituted a necessary and reasonable effort to

defend the Cortina lawsuit and that the amount of those costs was necessary and reasonable to achieve that purpose.

█ In examining this contention, we review the evidence most favorably to Barratt, giving the evidence "the benefit of every reasonable inference and resolving all conflicts in its favor. . . . Substantial evidence is evidence of ponderable legal significance, reasonable, credible, and of solid value. . . . However, '[s]ubstantial evidence . . . is not synonymous with "any" evidence.' . . . Instead, the evidence must be ' "substantial" proof of the essentials which the law requires.' . . ." (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100 [109 Cal.Rptr.2d 583], citations omitted.)

█ An insured may recover from its liability insurer investigative expenses if the costs were reasonable and necessary costs to defend the lawsuit. (*Aerojet-General, supra*, 17 Cal.4th at p. 58.) Barratt's evidence on this issue consisted of its attorneys, employees, and an expert defense coordinator testifying that in construction defect litigation it can be helpful and useful to obtain repair information from third party homes. These witnesses opined that this information is particularly valuable because it can be obtained through a process unhindered by civil discovery rules and the defendant can actually test alternative forms of repairs. Barratt's witnesses testified this repair information would have been helpful to refute damage estimates proffered by the Cortina plaintiff homeowners.

Although this evidence may have supported a general conclusion that it can be a reasonable trial strategy in construction defect litigation to use repair information from other homes in a residential development to bolster defense theories, this general conclusion does not support a reasonable inference that *in this case* it was reasonable and necessary to engage in this strategy by repairing every claimed defect in every Cortina nonplaintiff home and to spend $580,714.50 in doing so. The testimony of Barratt's attorneys and litigation coordinator (all of whom were testifying as percipient witnesses rather than experts) that it was possible that these unspecified repairs to the nonplaintiff homes could be useful to explain the nature of the plaintiffs' claimed construction defects and/or to help show the viability of a defense repair strategy was too theoretical to establish that a reasonable insured would have incurred all of these expenses in defending against the Cortina lawsuit in this case.

In reaching this conclusion, we emphasize two aspects of proof that were missing in this case.

First, there was no evidence that the problems found and corrective repairs made to the nonplaintiff homes were similar to the problems that were the

subject of the claims in the Cortina lawsuit, or that the repairs reflected alternate methods of repair that would potentially rebut the Cortina plaintiffs' repair costs at trial. Although the Cortina development may have contained only four floor plans, the homes were built in several phases and there was no evidence that, with respect to the particular repairs, the relevant items in the homes were built the same way, by the same methods, and with the same materials, or that they presented the same problems as those involved in this case. Further, there was no evidence connecting the repair work to the plaintiff homeowners' claims. For example, Barratt paid $15,516.30 to Angela's Glass & Mirror for work involving water intrusion and $10,722 to Fairway Landscaping for drainage work, but there was no showing that these repairs had any relationship or potential relationship to the *plaintiff homeowners'* defect claims. Although the nonplaintiff homes may have had similar floor plans to those of the plaintiff homes, the jury had no basis to find the materials used with respect to water intrusion or landscaping were similar or whether the problems suffered by these groups of individuals with respect to water intrusion or landscaping were related.

Second, it is not enough to produce evidence that repairs to nonplaintiff homes would be "helpful" or "useful" in litigation involving other homes in the residential development. It may always be said that a defendant would obtain some benefit from additional investigation that has some relationship to the subject of a lawsuit, but this fact is not enough to logically support the requisite finding that the investigation was reasonable and necessary for purposes of defending the existing suit. Instead, a developer seeking reimbursement for repair costs to homes not the subject of a lawsuit must present evidence that a reasonable insured would have engaged in a similar defense strategy, which necessarily involves a consideration of whether the benefits of the strategy are worth the cost. Without this weighing analysis, the fact that it may be helpful or useful to a defense to learn additional information does not—in and of itself—lead to an inference that a reasonable insured would have found the costs were reasonable and necessary to defend the lawsuit. Moreover, the fact that Barratt attorneys and employees may have actually believed this was a good defense strategy or that they were subjectively motivated to do the repairs by a desire to obtain more information in the Cortina lawsuit does not support an inference that a reasonable insured would also reach this conclusion. "What matters here is whether the . . . investigation would be conducted against liability by a reasonable insured under the same circumstances." (*Aerojet-General, supra,* 17 Cal.4th at p. 62.)

If we were to conclude the evidence here was sufficient to show the expenses constituted a defense cost, an insured developer could be sued by a single homeowner, present its construction defect attorneys' opinions that it

would be "helpful" to the defense to obtain repair information from 500 other homes in the same development, and meet its burden of proof to show that the money spent repairing these other 500 homes is recoverable as defense costs. This result would eviscerate and render meaningless *Foster-Gardner*'s holding that an insurer's duty to defend is not triggered until a suit is filed and *Powerine*'s holding that an indemnity obligation is not triggered until after a lawsuit is filed and resolved, and would permit residential developers to recoup all repair costs of an entire development based on a lawsuit by a single homeowner. While we have concluded that it is conceptually possible to prove that in construction defect litigation a repair of a nonparty home can be a reasonable and necessary expense to support defense theories *in the filed lawsuit*, there must be meaningful proof establishing a connection between the particular repairs and the defense theory.

We conclude the evidence was insufficient to show the $580,714.50 in expenses to repair nonplaintiff homes qualified as recoverable defense expenses in the Cortina litigation.

Barratt raises a number of arguments in an attempt to show that Transcontinental's sufficiency of the evidence challenge is without merit. We find these arguments unpersuasive.

First, Barratt contends it was Transcontinental's burden to show the costs were unreasonable and unnecessary, and the jury could have found that Transcontinental's expert evidence on this issue was not credible. ▮ In *Aerojet-General*, the court explained the burden of proof for recovery of defense investigation costs as follows: "In the general case, it is the insured that must carry the burden of proof on the existence, amount, and reasonableness and necessity of the site investigation expenses as defense costs, and it must do so by the preponderance of the evidence. . . . [¶] By contrast, in the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the site investigation expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary." (*Aerojet-General, supra,* 17 Cal.4th at p. 64.)

▮ Barratt argues that because it presented evidence that Transcontinental breached its duty to defend by failing to immediately accept the tender and the parties stipulated as to the amount that was spent on the repairs to the nonplaintiff homes, Barratt proved the existence and amount of the investigation expenses, and therefore the burden of proof shifted to Transcontinental to prove the costs were unreasonable and unnecessary.

A close reading of the *Aerojet-General* decision reveals that the burden shifting rule is inapplicable to the particular situation before us. ▉ Under *Aerojet-General*, the burden does not shift to the insurer to prove the expenses were unreasonable or unnecessary until the insured has met its burden to prove the "*existence . . . of the . . . investigation expenses . . . .*" (*Aerojet-General, supra,* 17 Cal.4th at p. 64, italics added.) The fact that the parties stipulated that $580,714.50 was spent on repairs to the nonplaintiff homes does not mean that Barratt satisfied *its* burden to show the existence of investigation expenses. To show that the repairs even constituted a defense investigation expense, Barratt had the initial obligation to establish that a reasonable insured would have made the repairs to third party homes in defense of the lawsuit that was in fact brought.

▉ Further, *Aerojet-General* rested its conclusion that the burden should shift in the "exceptional case" on the line of authority holding that where an insurer has breached a duty to provide legal representation to the insured, leaving the insured to mount his own defense or suffer a default, a presumption arises that the amount of any settlement and/or defense costs was reasonable. (*Aerojet-General, supra,* 17 Cal.4th at p. 64; see *Fireman's Fund Ins. Companies v. Ex-Cell-O Corp.* (E.D.Mich. 1992) 790 F.Supp. 1339, 1345; *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].) Here, the undisputed evidence showed that Transcontinental was never asked to provide additional legal counsel or that Barratt was left to mount its own defense. Instead, at the time of the tender, Barratt's direct insurer (Gerling) had accepted the duty to defend, Barratt had already been in litigation for one year, and Barratt was fully represented by legal counsel paid by Gerling.[4] As Barratt's counsel said during closing argument, the alleged breach of duty here instead concerned Transcontinental's failure to (1) timely contribute to paying for that defense; and (2) pay the third party repair/investigation costs. Given the nature of these asserted breaches of duty and the fact the critical issue was whether the funds spent on repairs constituted recoverable defense costs, there was no basis to shift the burden to Transcontinental to initially prove the expenditures for repairs to third party homes were unreasonable and unnecessary.[5]

Barratt next argues that Transcontinental waived its right to challenge the sufficiency of the evidence by adopting an "all or nothing" strategy at trial.

---

[4]Although the evidence showed that Gerling did not timely pay Barratt's attorney fees and defense expert bills, the evidence does not show that Barratt's defense was impeded or that if those bills had been paid more promptly the defense would have been improved. Gerling's defense did not lessen Transcontinental's duty to defend (because each insurer's defense duty is independent), but the fact of Gerling's defense bears on the applicability of the burden shifting rule under the circumstances here.

[5]We note further that at trial Barratt did not object to the court's jury instruction that Barratt had the burden of proof on this issue.

In support, Barratt points out that Transcontinental did not call as a trial witness its defense expert who conducted a detailed review of Barratt's repair invoices, Transcontinental failed to insist on a special verdict question regarding the portion of the repair expenses that constituted recoverable defense costs, and Transcontinental requested the court to make an allocation of recoverable repair costs in its postverdict motion.

These arguments are unavailing. Transcontinental's trial strategy did not eliminate Barratt's need to meet its burden of proof. In particular, Transcontinental's failure to call its defense expert to discuss each objectionable repair invoice does not mean Barratt was relieved of its duty to prove the relationship between the various repairs and its defense in the underlying litigation. Similarly, while it may have been helpful if the jury had been asked to specifically identify the portion of the repair costs that reflected reasonable and necessary costs, the record does not show the absence of this question on the verdict form eliminated Barratt's burden on this issue, or that Transcontinental's failure to insist on the question establishes Transcontinental's waiver of the issue. Likewise, Transcontinental's postverdict motion reflects Transcontinental's efforts to remedy a failure of proof at trial, and does not establish the intentional relinquishment of a defense or the right to challenge Barratt's failure of proof on appeal.

We additionally reject Barratt's argument that Transcontinental waived the sufficiency of the evidence issue by failing to fully recite in its appellate briefs all of the evidence supporting Barratt's position. While it certainly would have been helpful if Transcontinental had provided a more detailed description of the evidence supporting the verdict, Transcontinental's summary of the relevant evidence was sufficient for this court to evaluate its appellate challenges.

On the record before us we conclude there was not sufficient evidence supporting the finding that all of Barratt's repairs to the nonplaintiff homes constituted recoverable defense costs in the Cortina action. Accordingly, we reverse the judgment. We decline, however, to enter judgment in Transcontinental's favor. Because the record establishes Transcontinental is legally obligated to pay defense costs and at least some of the repair costs may qualify as recoverable defense costs upon a proper evidentiary record, Barratt should not be denied the opportunity to prove whether some or all of the repair costs constitute recoverable defense costs.

### III. *Transcontinental's Challenges to Jury Instructions*

In addition to challenging the sufficiency of the evidence, Transcontinental asserts several jury instruction errors. While these contentions are technically moot because we are reversing the judgment on the ground of

insufficiency of the evidence, we briefly consider several issues raised by the instructions because these issues may arise in the event of a retrial.

■ Transcontinental initially contends the trial court erred in giving an instruction that an insured has the right to control the litigation after its insurer has improperly failed or refused to defend. This instruction read: "When an insurer fails or refuses to defend a claim against its insured, it forfeits control over the management of the claim, and the insured is released from its obligation to obtain the consent of the insurer to incur defense costs, and is justified in proceeding in whatever manner seems proper under the circumstances. This is true whether or not the insured is defended by another insurer."

We agree that this right-to-control instruction had the potential to confuse the jury and to improperly expand the definition of a recoverable defense cost. Although the court also instructed the jury in the language of *Aerojet-General* that Barratt had the burden to show the investigative costs were "incurred in a reasonable and necessary effort to avoid or minimize liability in the Cortina action,"[6] the right-to-control instruction stated that where an insurer breaches its obligation to defend (which can include merely failing to pay investigative costs), the insured is justified in proceeding "in whatever manner seems proper under the circumstances." The jury was never told how to reconcile these seemingly inconsistent instructions, and could have improperly concluded that if it found a breach, Barratt could recover the repair costs without a showing that those costs were reasonable and necessary to defend the Cortina litigation, as long as the manner of proceeding appeared "proper under the circumstances."

Additionally, although the jury was instructed on the meaning of a defense cost in the exact language of the *Aerojet-General* decision (see fn. 6, *ante*), this language was problematic in the factual context of this case. The jury was told that Barratt had the burden to show the investigative costs "were incurred in a reasonable and necessary effort to avoid or minimize liability in the *Cortina action* . . . ." (Italics added.) While this statement made sense under the specific facts of *Aerojet-General*, in this case the statement had a substantial potential to mislead the jury into believing that the repair costs

---

[6]This instruction read: "Defense costs may include investigative costs to the extent that: [¶] 1. investigative costs are incurred after the insured tenders the defense to the defendant; [¶] 2. the investigative costs were incurred in a reasonable and necessary effort to avoid or minimize liability in the Cortina action; and [¶] 3. such investigative costs are reasonable and necessary for that purpose."

were recoverable merely because they prevented the nonplaintiff homeowners from joining the lawsuit.[7] Although costs spent on nonplaintiff home repairs would certainly have had the effect of "avoiding or minimizing" liability *in the Cortina action* (by limiting the number of plaintiffs in the *action*), under *Foster-Gardner* and *Aerojet-General,* these costs are not recoverable unless they are reasonable and necessary to the particular suit *actually brought against the insured.* In a case such as this involving a single residential development where only a portion of the homeowners have filed suit, it should be made clear to a jury that repair costs to the homes of nonplaintiff homeowners are not recoverable merely because they reduce the likelihood that other homeowner plaintiffs will join the lawsuit. The fact that the jury was further instructed that "[t]he scope of an insurer's duty to defend includes only a duty to defend 'suits' " and that a " 'suit' means that the parties to an action are involved in an actual court proceeding initiated by the filing of a complaint" was inadequate to explain this fundamental concept in light of the *Aerojet-General* instructions.

Transcontinental also contends the instructions were improper because the trial court failed to make clear the determination whether an expense constitutes a defense cost is an objective test, and should not be determined "subjectively from the viewpoint of either the insurer or the insured." (*Aerojet-General, supra,* 17 Cal.4th at p. 62.) Although this concept is inherent in the instruction requiring the defendant to show the repair costs were a reasonable and necessary defense cost (see fn. 6, *ante*), it would have been appropriate to make this fact explicit to the jury. Under the facts of this case, however, there was no error because neither party specifically requested this additional clarifying instruction.

## IV. *Declaratory Relief Cause of Action*

Before trial, Barratt moved for summary judgment on the issue whether Transcontinental had a duty to defend Barratt in the Cortina action. Transcontinental responded that its duty was limited to the defense relating to Bernard Roofing's work. In granting summary adjudication on this issue before trial, the court rejected Transcontinental's argument, relying on this court's decision in *Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21 [76 Cal.Rptr.2d 113], which held that language in an additional insured provision limiting coverage to the additional insured's vicarious liability for the primary insured's acts did not eliminate the insurer's duty to defend the entire action on behalf of the additional insured.

---

[7]Barratt's counsel improperly endorsed this line of reasoning during closing arguments when he stated that "Mr. Sooy testified . . . one of the purposes for doing the [repair] work at the nonplaintiff homes . . . was to keep those people out of the lawsuit. Remember that? . . . Barratt wanted to keep people out of the lawsuit. Now, is that a legitimate defense purpose? We believe it is. Anything done to avoid or minimize liability is a defense purpose. It's a defense cost."

Transcontinental does not appeal from this determination. We agree with Barratt that this waives Transcontinental's right to challenge this determination on remand. However, we do not agree with Barratt to the extent it argues that the court's summary adjudication on this particular issue provides an alternate basis to uphold the judgment. The court's summary adjudication was merely a determination on a preliminary issue in the case that pertained to the scope of Transcontinental's duty to defend Barratt under the policy language. It did not adjudicate whether that duty was breached, and whether the proffered repair costs qualified as recoverable defense costs.[8]

BARRATT'S CROSS-APPEAL*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

We affirm that portion of the judgment granting declaratory relief regarding Transcontinental's duty to defend under the policy. We also affirm that portion of the judgment granting a directed verdict for Transcontinental on Barratt's claim that it was entitled to recover defense costs before its June 1997 tender letter. We reverse the judgment in all other respects. Transcontinental to recover costs on appeal.

Huffman, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied October 22, 2002.

---

[8]Each of the parties raises additional contentions that are rendered moot by our decision to reverse the judgment—Transcontinental asserts issues regarding postverdict allocation and Barratt asserts issues regarding prejudgment interest.

As a matter of guidance at any retrial, we note the following broad concepts with respect to allocation issues. Barratt correctly asserts that it was entitled to a defense of both covered and noncovered claims. Thus, assuming Barratt can prove the repair costs were reasonably necessary to defend the Cortina action, Transcontinental is responsible for all of those costs unless it affirmatively establishes that the cost was incurred solely to defend a claim that was not potentially covered under its policy. (*Buss v. Superior Court* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Unless the parties agree on a formula allocation to be applied by the trial judge, this will require Transcontinental to come forward with evidence to establish the appropriateness and amount of an allocation.

*See footnote 1, *ante*, page 848.